# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| TAMMY SUE DEASON, | ) |
| Plaintiff, | ) ) |
| v. | ) Case No. CIV-15-12-SPS ) |
| CAROLYN W. COLVIN, Acting Commissioner of the Social Security Administration, | ) ) ) ) |
| Defendant. | ) ) |

## OPINION AND ORDER

The claimant Tammy Sue Deason requests judicial review pursuant to 42 U.S.C. § 405(g) of the decision of the Commissioner of the Social Security Administration ("SSA") denying her application for benefits under the Social Security Act. The claimant appeals the decision of the Commissioner and asserts that the Administrative Law Judge ("ALJ") erred in determining she was not disabled. For the reasons set forth below, the decision of the Commissioner should be AFFIRMED.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if h[er] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]"

42 U.S.C. § 423(d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: 1) whether the decision was supported by substantial evidence, and 2) whether the correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997) [citation omitted]. The term "substantial evidence" requires "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). However, the Court may not reweigh the evidence nor substitute its discretion for that of the agency. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the Court must review the record as a whole, and "[t]he substantiality of evidence must take into

---

[1] Step one requires the claimant to establish that she is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. *Id*. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity, or if her impairment is not medically severe, disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. pt. 404, subpt. P, app. 1. If the claimant suffers from a listed impairment (or impairments "medically equivalent" to one), she is determined to be disabled without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must establish that she lacks the residual functional capacity (RFC) to return to her past relevant work. The burden then shifts to the Commissioner to establish at step five that there is work existing in significant numbers in the national economy that the claimant can perform, taking into account her age, education, work experience, and RFC. Disability benefits are denied if the Commissioner shows that the claimant's impairment does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

**Claimant's Background**

The claimant was born on July 6, 1963, and was fifty years old at the most recent administrative hearing (Tr. 80, 231, 235). She has between a seventh and ninth grade education,[2] and has worked as a fast food cook and cook's helper (Tr. 109-10). The claimant alleges she has been unable to work since February 3, 2007, due to hepatitis c, high blood pressure, severe depression, and panic disorder with agoraphobia (Tr. 264, 296).

**Procedural History**

On June 1, 2011, the claimant filed for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, and on June 13, 2011, she applied for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85 (Tr. 231-41). Her applications were denied. ALJ Bernard Porter held an administrative hearing and a supplemental hearing, and determined the claimant was not disabled in a written decision dated August 23, 2013 (Tr. 11-31). The Appeals Council denied review, so the ALJ's written decision represents the final decision of the Commissioner for purposes of this appeal. *See* 20 C.F.R. §§ 404.981, 416.1481.

---

[2] Claimant reported on her Disability Reports that she completed ninth grade (Tr. 268, 297). The claimant reported at her initial assessment with CREOKS, and testified at the hearing on July 24, 2013, that she completed eighth grade (Tr. 82, 537). The claimant reported to Dr. Brandmiller that she completed seventh grade (Tr. 433).

-3-

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He found that the claimant retained the residual functional capacity ("RFC") to perform light work, *i. e.,* she could lift/carry twenty pounds occasionally and ten pounds frequently; could sit/stand/walk for six hours total during an eight-hour workday; could push/pull as much as she could lift/carry; but could never climb ropes, scaffolds, and ladders; could never crawl; and needed to avoid exposure to unprotected heights and dangerous moving machinery (Tr. 21). The ALJ further found the claimant was limited to simple work and simple work-related decisions, and could have occasional interaction with supervisors and co-workers, but could have no interaction with the public (Tr. 21). He also found that her time off task would be 5% of the workday and that she may miss up to one workday each month (Tr. 21). The ALJ concluded that although the claimant could not return to her past relevant work, she was nevertheless not disabled because there was work that she could perform in the regional and national economies, *e. g.*, laundry folder, small parts assembler, and copy machine operator (Tr. 30).

## Review

The claimant contends that the ALJ erred by failing to: (i) properly consider consultative examiner Dr. Brandmiller's opinion, and (ii) specifically discuss an SSA employee's observations. The Court finds these arguments unpersuasive.

The ALJ determined that the claimant had the severe impairments of hepatitis c, hypertension, major depressive disorder, borderline personality disorder, anxiety disorder, and panic disorder (Tr. 13). The medical evidence relevant to this appeal

reveals that the claimant presented to the Sequoyah Memorial Hospital Emergency Room on January 29, 2011, after consuming four beers, two mixed drinks, and an unknown amount of opioid pain pills (Tr.481-96). Dr. Christopher Orendorff noted the claimant initially reported she wanted to harm herself, and was very tearful and emotional, but once her family arrived and her alcohol level decreased, she denied any suicidal ideation, wanted to go home, and was in a much better mood (Tr. 495). She was diagnosed with alcohol intoxication (resolved), histrionic personality disorder, suicidal ideation (resolved), hepatitis c, and hypertension (Tr. 495). Dr. Orendorff extensively counseled the claimant to abstain from alcohol use (Tr. 496).

On April 13, 2011, the claimant began weekly counseling sessions with behavior specialist Beverly Bargar that continued through February 2, 2012 (Tr. 551-92). The claimant repeatedly denied suicidal/homicidal ideations and audio/visual hallucinations and consistently reported improvement at these sessions, although, on September 15, 2011, she did report having a hard time at home and visual hallucinations (Tr. 560). By September 22, 2011, the claimant reported excitement over changes and relief from symptoms (Tr. 558). After February 2, 2012, there are no records of counseling sessions until May 24, 2012, when the claimant again resumed weekly counseling with Ms. Bargar that continued through July 19, 2012 (Tr. 616-26). Ms. Bargar regularly noted the claimant was very open and talkative at these sessions, and on May 29, 2012, and July 13, 2012, she noted the claimant was engaged, attentive, and insightful (Tr. 617, 625).

On April 18, 2011, licensed professional counselor Kari Dry conducted a mental health assessment of the claimant in conjunction with commencing mental health treatment (Tr. 534-44). The claimant reported that she had daily anger, that she was irritable and anxious most of the time, and that she was depressed 2-3 times per week (Tr. 538). She further reported misplacing things around her house and often repeating herself (Tr. 539). Ms. Dry diagnosed the claimant with major depression (recurrent, moderate) and anxiety disorder not otherwise specified (Tr. 541).

On April 30, 2011, the claimant began psychotropic medication management with physicians at CREOKS Behavioral Health Services which continued until June 7, 2013 (Tr. 595-602, 631-40). At her initial appointment, Dr. Delia diagnosed the claimant with major depressive disorder (recurrent, severe), and panic disorder with agoraphobia (Tr. 602). By December 3, 2011, claimant reported her medications were working well (Tr. 597). On July 13, 2012, the claimant reported "nothing help[ed]" and that she had been crying for the past four days for no reason (Tr. 595). After further medication adjustments, the claimant reported her medications were once again working well at both of her remaining appointments in 2012 (Tr. 629, 633). At a follow up appointment on February 4, 2013, the claimant reported she stopped taking her medications due to weight gain (Tr. 631). Dr. Jennings noted the clamant was irritable with a depressed affect and that her medication compliance was poor (Tr. 632). He prescribed psychotropic medications again (Tr. 632). By May 17, 2013, the claimant had once again stopped taking her medications, stating they did not work, but reported on June 7, 2013, that they were effective (Tr. 635- 40).

The claimant underwent a mental status examination by Dr. Diane Brandmiller, on August 30, 2011 (Tr. 432-35). Dr. Brandmiller noted that the claimant's thought processes were logical and goal-directed, her expressive and receptive language skills appeared intact, but that her short term memory, concentration, and abstract thinking appeared impaired (Tr. 434). Dr. Brandmiller diagnosed the claimant with major depressive disorder (recurrent, moderate), borderline personality disorder, and hepatitis c (Tr. 435). She opined that the claimant appeared able to understand and carry out simple instructions, but that she may have difficulty responding appropriately to authority figures and supervisors (Tr. 435).

State reviewing psychologist Dr. Cynthia Kampschaefer reviewed the claimant's record on September 9, 2011 (Tr. 436-53). She concluded on the Psychiatric Review Technique Form ("PRT") that the claimant had moderate limitations in maintaining social functioning and in maintaining concentration, persistence, or pace (Tr. 446). On the Mental RFC Assessment, Dr. Kampschaefer opined that the claimant was markedly limited in her ability to understand and remember detailed instructions, to carry out detailed instructions, and to interact appropriately with the general public (Tr. 450-51). Dr. Kampschaefer concluded that the claimant could perform simple tasks with routine supervision, could relate to supervisors and peers on a superficial work basis, and could adapt to a work situation, but could not relate to the general public (Tr. 452).

State reviewing physician Dr. Jane Cormier reviewed the claimant's record on January 15, 2012 (Tr. 498-512). She affirmed Dr. Kampschaefer's assessment, but then

concluded on the PRT that there was insufficient evidence to assess prior to the claimant's date last insured (Tr. 511).

On October 6, 2011, Ms. Bargar completed a number of Medical Source Statements ("MSS") supplied by the claimant's attorney (Tr. 454-61). Ms. Bargar found the claimant unable to do nearly all work related activities due to anxiety, depression, visual hallucinations, inability to concentrate, and social phobia (Tr. 455, 459-60). However, Ms. Barger did state that the claimant was seriously limited, but not precluded, from sustaining an ordinary routine without special supervision, and that she had a limited, but satisfactory, ability to ask questions and adhere to basic standards of neatness and cleanliness (Tr. 459-60). Ms. Bargar opined that the claimant would be absent from work three or more days per month (Tr. 454). Her prognosis was that the claimant may be able to cope someday with continued therapy (Tr. 457).

At the supplemental administrative hearing, the claimant testified that she is unable to work because of panic attacks (Tr. 88). She stated she experiences panic attacks three or four times per week, and that they last for approximately 20 minutes (Tr. 88). She stated being around people triggers her panic attacks, and that she does not experience them at home (Tr. 88). The claimant testified the side effects of her medications include sweating, upset stomach, and dry mouth (Tr. 93). She also testified she first sought mental health treatment in 2011 (Tr. 108).

In his written opinion, the ALJ summarized the claimant's hearing testimony, as well as the medical evidence in the record (Tr. 22-29). As to her mental impairments, the ALJ noted the claimant's treatment at CREOKS, Dr. Brandmiller's findings, Ms.

Bargar's MSS, Dr. Jennings' treatment notes, and the opinion of the state reviewing psychologist (Tr. 22-28). He found the claimant not completely credible due to her daily activities, the effectiveness of medication, her noncompliance with prescribed medication, Dr. Jennings' basically normal mental status examination without medication, her continued alcohol abuse against medical advice, inconsistencies between her testimony and the record, and the lack of restrictions imposed by any treating physician (Tr. 23-24). The ALJ gave Ms. Bargar's opinions little weight, noting a number of inconsistencies between her MSS and her own counseling notes, the claimant's reports, Dr. Brandmiller's consultative exam, and treatment notes from CREOKS (Tr. 26-27). The ALJ gave Dr. Brandmiller's opinion and the state reviewing psychologist's opinion great weight, finding they were supported by and consistent with the medical record (Tr. 27-28).

The claimant contends that the ALJ improperly adopted some, but not all of the findings of Dr. Brandmiller, relying on *Haga v. Astrue*, 482 F.3d 1205 (10th Cir. 2007), for support. *See Haga*, 482 F.3d at 1208 ("[T]he ALJ should have explained why he rejected four of the moderate restrictions on Dr. Rawlings' RFC assessment while appearing to adopt the others. An ALJ is not entitled to pick and choose through an uncontradicted medical opinion, taking only the parts that are favorable to a finding of nondisability. . . . [T]he ALJ did not state that any evidence conflicted with Dr. Rawlings' opinion or mental RFC assessment. So it is simply unexplained why the ALJ adopted some of Dr. Rawlings' restrictions but not others. We therefore remand so that the ALJ can explain the evidentiary support for his RFC determination."). Specifically, the

claimant contends the ALJ failed to adopt Dr. Brandmiller's opinion regarding her difficulty in dealing with supervisors, but this is not borne out in the opinion. The ALJ's RFC limits the claimant to occasional interaction with supervisors, and Dr. Brandmiller's opinion states the claimant "may have difficulty responding appropriately to supervisors," not that she is unable to respond appropriately to supervisors (Tr. 21, 435). Furthermore, even if the ALJ did err in his analysis of Dr. Brandmiller's opinion, such error is harmless here because the jobs identified by the ALJ are not contrary to Dr. Brandmiller's opinion related to any potential difficulty responding appropriately to supervisors since the requirements of "Taking Instructions – Helping" is considered "not significant" and talking and hearing are "not present" as requirements for all three identified jobs. See DICOT §§ 369.687-018, 706.684-022, 207.685-014.

The claimant last argues that the ALJ erred by failing to specifically discuss the observations of an SSA employee who conducted a telephone interview with the claimant and completed a Field Office Disability Report on March 6, 2009 (Tr. 260-62). The SSA employee called the claimant to discuss finishing the application she started online (Tr. 261). He noted the claimant had difficulty concentrating, was "hysterical and crying," and that she said she did not know how to fill out the forms (Tr. 261). "[I]n addition to discussing the evidence supporting his decision, the ALJ must also discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects." *Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). However, specific written findings about each lay witness's credibility are not necessarily required, particularly where the ALJ's written decision reflects that he considered the evidence.

*See Adams v. Chater,* 93 F.3d 712, 715 (10th Cir. 1996). A specific credibility determination is also not required for lay witness statements that are cumulative of other evidence that was discussed. *See Brescia v. Astrue,* 287 F. Appx. 626, 630 (10th Cir. 2008) (finding no reversible error where the ALJ did not discuss lay witness testimony that was "largely cumulative" of the claimant's testimony and written statements); *See also Best-Willie v. Colvin,* 514 F. Appx. 728, 736 (10th Cir. 2013) (finding no reversible error where the ALJ did not discuss a lay witness statement when "the same evidence that the ALJ referred to in discrediting [the claimant's] claims also discredits [the lay witness's] claims."). Here, apart from stating generally that he carefully considered the entire record and all of the evidence, the ALJ did not mention the SSA employee's observations (Tr. 20, 22). However, the employee's observations are largely cumulative of the claimant's written statements, which the ALJ properly found were not completely credible. The claimant asserts in her brief that the SSA employee's observations would corroborate her own written statements, which, in essence, is an agreement that the employee's statements are largely cumulative of her own. Moreover, the Tenth Circuit has declined to remand for an error in the ALJ's credibility determination where "the balance of the ALJ's credibility analysis is supported by substantial evidence in the record." *Branum v. Barnhart,* 385 F.3d 1268, 1274 (10th Cir. 2004). Here, the ALJ provided numerous reasons, supported by the record, to discount the credibility of the claimant's alleged symptoms. Therefore, the Court finds any error in failing to mention the SSA employee's observations is harmless and does not require remand.

## Conclusion

In summary, the Court finds that correct legal standards were applied by the ALJ, and the decision of the Commissioner is therefore supported by substantial evidence. The decision of the Commissioner of the Social Security Administration is accordingly hereby AFFIRMED.

**DATED** this 16th day of March, 2016.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**